IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | |
|---|---|
| CONSTELLATION IP, LLC | |
| v. | 5:07-cv-38-DF-CMC |
| AVIS BUDGET GROUP, INC., et al. | Jury |

**CONSTELLATION'S RESPONSE IN OPPOSITION TO FEDEX'S MOTION FOR PROTECTIVE ORDER, AND CROSS-MOTION FOR ENTRY OF CONSTELLATION'S PROPOSED PROTECTIVE ORDER**

Plaintiff Constellation IP, LLC ("Constellation") hereby responds in opposition to the Motion for Protective Order filed by Defendants FedEx Corp. and FedEx Corporate Services, Inc. (collectively "FedEx"). In addition, Constellation hereby moves for the entry of its proposed protective order, which is Exhibit 1 hereto.

**I.   Introduction.**

This case involves Constellation's claim that FedEx infringes U.S. Patent No. 6,453,302 (the "'302 patent"). Exemplary Claim 11 of the '302 patent covers the following:

> 11.   A computer system for generating a customized presentation for a customer of a selling entity to facilitate a sale of a product offered for sale by the selling entity to the customer, the computer system comprising:
>
>    a memory arrangement storing a plurality of selling entity elements, each of said selling entity elements having a corresponding impression characteristic which the customer of the selling entity identifies with the selling entity;
>
>    a plurality of subsystems, including at least one processing unit coupled to access the memory arrangement, the plurality of subsystems including:
>
>    a customer solution subsystem provided to develop a customer solution for the customer based on customer information received in the customer solution subsystem representing an interest of the customer in the product, and
>
>    a presentation item generating subsystem provided to retrieve a selling entity element from the plurality of selling entity elements and to generate a

presentation item by integrating, in a manner which maintains the corresponding impression characteristic of the selected selling entity element, customer solution information with the selected selling entity element to reflect a portion of the customer solution;

and an output device provided to output a customized presentation for presentation of the customer solution in a manner which reinforces the identity of the selling entity.[1]

This is not a case in which high tech competitors are litigating over fiercely guarded technology rife with trade secrets. FedEx primarily sells shipping products and services under its FedEx brand; and office supplies/services such as copying under its FedEx Kinkos brand. This lawsuit primarily involves infringing activities at www.fedex.com which, among other things, generates customized presentations comprising selling entity elements and customer solution information to facilitate sales of FedEx's products and services.

FedEx makes multiple unsupported and baseless assertions against Constellation and what FedEx alleges to be the "Spangenberg Companies."  Such baseless assertions are completely irrelevant to the issue before the Court and should be seen for what they are – a blatant attempt to put Constellation in a bad light before this Court.  Constellation vehemently denies that it or any affiliated entity engages in any improper or unethical behavior.  However, it is not disputed that Constellation's business comprises licensing and enforcing its '302 patent. Constellation strongly disagrees with FedEx's insinuation that the licensing or enforcement of one's intellectual property is an improper activity.

The point most relevant to the issue at hand is that neither Constellation nor any company allegedly related to Constellation competes with FedEx in the shipping or office supply/service businesses.

---

[1] A copy of the '302 patent is attached to Constellation's Amended Complaint on file with the Court. Since the '302 patent is seventy-three pages long, Constellation did not attach another copy to this Response. However, Constellation will promptly submit an additional copy of the '302 patent if the Court desires.

Besides the prosecution bar discussed herein, all provisions of the parties' proposed protective orders are agreed upon. FedEx's proposed prosecution bar is as follows:

> Notwithstanding any other provisions of this Protective Order, any individual who receives Protected Matters designated as "HIGHLY CONFIDENTIAL - TECHNICAL" shall not draft, prosecute, supervise, or assist in the prosecution of patent *applications related to the subject matter* of the patent in suit during the pendency of this case or for one (1) year after termination of this litigation, including any appeals.

(Emphasis added). FedEx's inappropriate proposal is vague and overbroad because it seeks to restrict Constellation's outside litigation counsel from prosecuting applications "related to the subject matter" of the '302 patent. During the meet and confer process, FedEx was specifically asked to define what it meant by the phrase "related to the subject matter" but it refused to do so. One would think that even FedEx would agree that the language of the prosecution bar should be specific enough so that attorneys subject to the prosecution bar provision would know – not have to guess – what conduct is prohibited. FedEx's proposal only sets the stage for the next motion to be filed with the Court --- whether some application is or is not "related to the subject matter of the '302 patent." FedEx's proposal is further overbroad because it seeks to restrict Constellation's outside counsel from prosecuting such applications (whatever those may be) for *any* clients, not just Constellation.

Although FedEx has not demonstrated good cause for any prosecution bar in this case, much less one that is vague and overbroad, in an effort at compromise Constellation has proposed a fair and reasonable alternative which is consistent with pertinent Federal Circuit authority and prior practice in this District. Constellation's proposal is as follows:

> Notwithstanding any other provisions of this Protective Order, any individual who receives Protected Matters designated as "HIGHLY CONFIDENTIAL - TECHNICAL" shall not draft, prosecute, supervise, or assist in the prosecution of patent *applications owned by Constellation* during the pendency of this case or for

3

> one (1) year after termination of this litigation, including any appeals, even if such applications are transferred to another person during said time period.

Ex. 1, 18. Reasonably, Constellation has proposed that its outside litigation counsel having access to Highly Confidential Technical information shall be barred from prosecuting any patent applications owned by Constellation.[2] Moreover, to address FedEx's concern that Constellation might transfer its patent applications, Constellation has proposed that the prosecution bar would follow these applications in the event they are transferred.

Constellation's proposal is consistent with the Federal Circuit's admonition that prosecution bars should be narrowly tailored. In addition, Constellation's proposal avoids unfairly inhibiting its outside counsel's ability to work for other clients, and it avoids the vagueness of FedEx's proposal.

FedEx's attempt to show good cause for its vague and overbroad prosecution bar is a mixture of ad hominem attack and unsupported assertions. FedEx broadly alleges that it has highly confidential technical information that Constellation's outside counsel might misuse, yet FedEx fails to bring forth any facts supporting such allegations. In addition, FedEx has failed to show, and cannot show, that Constellation's outside litigation counsel are involved in "competitive decision-making," which is the applicable standard under Federal Circuit precedent.

An apparent motive behind FedEx's unjustified pursuit of this issue was discussed during the meet and confer process and is noted in FedEx's Motion, where it states that, "[i]mportantly, counsel for Constellation and the other Spangenberg Companies has been unwilling to represent on behalf of the Spangenberg Companies that any other existing or later issued patents will not be asserted against FedEx." Motion at p. 9, n. 2. Constellation submits it is wholly improper for

---

[2] Such outside counsel have no intention of prosecuting any patents for Constellation, at least during the relevant time frame, so it is unnecessary to propose any narrower restrictions on their prosecution activities for Constellation.

4

FedEx to attempt to use this Court's power to restrict the work activities of Constellation's outside litigation counsel for other clients as leverage to seek licenses to patents, including issued patents for which prosecution closed years ago, wholly unrelated to this lawsuit.

Rather than addressing facts relevant to the prosecution bar and the competitive decision-making standard, FedEx focuses mostly on the irrelevant issue of what FedEx refers to as the "Spangenberg Companies."  No one working for any of the alleged "Spangenberg Companies" (except Constellation's outside litigation counsel) will have access to Highly Confidential – Technical information under either side's version of the protective order.  The *only* persons who will have access to Highly Confidential – Technical information are outside litigation counsel and outside experts or consultants that are eventually qualified to receive such information under the protective order.  Thus, FedEx's focus on the "Spangenberg Companies" potentially "misusing" FedEx's unspecified confidential information is really an indirect attack on Constellation's outside litigation counsel who also practice patent prosecution, who are the only persons impacted by FedEx's proposed bar.

**II.     Legal Analysis.**

    **A.     Protective Orders Should Not be Overbroad.**

Courts should enter protective orders only to protect legitimate interests, and even then, should tailor them to be only as broad as needed to protect those interests. *See, e.g., Bucher v. Richardson Hosp. Authority*, 160 F.R.D. 88, 92 (N.D. Tex. 1994) ("courts only grant as narrow a protective order as is necessary under the facts").  A finding of good cause to enter and fashion a protective order must be based on a particular factual demonstration of potential harm, not on conclusory statements. *See, e.g., IJR, Inc. v. Sodick, Inc.*, 1987 U.S. Dist. LEXIS 11087, *3-*4 (N.D. Ill. Nov. 23, 1987).  "Broad allegations of harm, unsubstantiated by specific examples or

articulated reasoning, do not satisfy the Rule 26(c) test." *Cipollone v. Ligget Group, Inc.*, 785 F.2d 1108, 1121 (3rd Cir. 1986).

      **B.**      **Courts Should Start from the Presumption that Outside Litigation Counsel Follow Court Orders.**

There is no reason for the Court to presume that Constellation's outside litigation counsel will not strictly follow the protective order and refrain from using, either inadvertently or intentionally, any confidential information for anything other than this litigation. Rather, the Court should presume they will follow its orders. *See, e.g., AFP Advanced Food Prods. LLC v. Snyder's of Hanover Mfg., Inc.*, 2006 U.S. Dist. 426, *7 (E.D. Pa., Jan. 9, 2006). *See In re Caplin & Drysdale*, 837 F.2d 637, 647(4th Cir. 1988) ("We refuse to presume that members of the bar will act in … an unethical fashion"); *Wallace ex rel. Northeast Util. v. Fox*, 7 F.Supp.2d 132, 137 (D. Conn.1998) ("Professional ethics are self-enforcing, and lawyers are entitled to the presumption of being ethical, until the contrary is shown in specific instances").

      **C.**      **Prosecution Bars May Be Common When Both Sides Agree on Them, but FedEx is Incorrect in Asserting that Prosecution Bars are "Routine." Rather, in Each Case it Must be Decided Whether the Facts Show Good Cause for a Particular Bar Against Specific Persons Involved in "Competitive Decisionmaking."**

FedEx's motion asserts that, "[c]ourts routinely deny those involved in patent prosecution activities access to a competitor's confidential information in litigation. *See, e.g., Commissariat a L'Energie Atomique v. Dell Computer Corp. . .*" This is incorrect. The *Dell Computer* case cited by FedEx states only that, "[t]his court has routinely recognized the importance of protecting technical information, particularly in patent cases." *Commissariat a L'Energie Atomique v. Dell Computer Corp*, No. Civ.A. 03-484-KAJ, 2004 WL 1196965, at *4 (D. Del. May 25, 2004).

Contrary to FedEx's suggestion that this Court should rubberstamp prosecution bars as a matter of course, "[t]he factual circumstances surrounding each individual counsel's activities, association, and relationship with a party, whether counsel be in-house or retained, must govern any concern for inadvertent or accidental disclosure." *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 (Fed. Cir. 1984) (copy attached as Exhibit 2). Specifically, involvement in "competitive decisionmaking" serves as the basis for denial of access. *Id.* Such involvement in competitive decisionmaking is "shorthand for a counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor." *Id.*

### D. Patent Prosecution does Not Involve Competitive Decisionmaking.

There is a split in the district courts as to whether patent prosecution involves competitive decisionmaking. The better reasoned view, consistent with the Federal Circuit's longstanding definition of competitive decisionmaking in *U.S. Steel*, is that patent prosecution does not involve competitive decisionmaking. *See In Re Sibia*, 1997 U.S. App. LEXIS 31828 at *3 - 4 (Fed. Cir. 1997) (copy attached as Exhibit 3).

*In Re Sibia*, while unpublished, "offers valuable insight into the Federal Circuit's application of competitive decisionmaking to patent prosecution." *Smartsignal Corp. v. Expert Microsystems, Inc.*, 2006 U.S. Dist. LEXIS 32305 (N.D. Ill. May 12, 2006). In that case, the defendant's outside counsel represented the defendant in patent prosecution work and had represented more than fifty clients on biotechnology matters, including the area involved in the underlying action. *In Re Sibia*, 1997 U.S. App. LEXIS 31828 at *7. Nevertheless, the Federal Circuit held that "denying access to [the defendant's] outside counsel on the ground that they

also prosecute patents for [the defendant] is the type of generalization counseled against in *U.S. Steel*. The facts, not the category, must inform the result." *Id.* The Court then reiterated that, under *U.S. Steel*, each case must be decided based on the specific facts involved therein. *Id. See also, Trading Techs. Int'l, Inc. v. eSpeed. Inc.*, 2004 U.S. Dist. LEXIS 19429, No. 04 C 5312, 2004 WL 2534389, at *1 (N.D. Ill. Sept. 24, 2004) (rejecting per se rule denying access to patent attorneys based on *U.S. Steel* and *In re Sibia*), *MedImmune, Inc. v. Centocor, Inc.*, 271 F. Supp. 2d 762, 774 n.13 (D. Md. 2003) ("If shaping patent applications amounts to competitive decisionmaking, the Court has trouble imagining a patent prosecutor who would not meet that standard.").

### E. Courts Should Reject Prosecution Bars Based on Assumptions Unsupported by Specific Facts.

Specific to the patent context, the Federal Circuit has held that the denial of access to confidential materials "cannot rest on a general assumption that one group of lawyers are more likely or less likely to inadvertently breach their duty under a protective order." *U.S. Steel*, 730 F.2d at 1468.  "A prosecution bar issued without some tangible reason or good cause other than the general threat of inadvertent misuse of discovery materials is the exact type of overly broad and generalized fear rejected in *U.S. Steel* and *Sibia*." *AFP Advanced Food Prods. LLC v. Snyder's of Hanover Mfg., Inc.*, 2006 U.S. Dist. 426, *7 (E.D. Pa., Jan. 9, 2006); *R.R. Donnelly & Sons Co. v. Quark*, 2007 U.S. Dist. LEXIS 424, *8 (D. Del Jan. 4, 2007). *See Avocent Redmond Corp. v. Rose Electronics, Inc.*, 2007 U.S. Dist. LEXIS 38078, *18 (WD Wash. May 24, 2007) ("The Court is unwilling to preclude lawyers from litigating here or in front of the patent office on a vague and generalized threat of future inadvertent misuse of discovered materials."). In short, there should be an individualized factual showing of competitive decisionmaking before a court should restrict attorneys with a prosecution bar. *See, e.g.,*

*Smartsignal Corp. v. Expert Microsystems, Inc.*, 2006 U.S. Dist. LEXIS 32305 (N.D. Ill. May 12, 2006). *U.S. Steel*, 730 F.2d at 1468.

### III.  Argument.

#### A.  FedEx Lacks Good Cause for Any Prosecution Bar, Much Less One that is Vague and Overbroad.  The Court Should Adopt Constellation's Proposed Compromise.

The law is clear that protective orders in general, and prosecution bars in particular, should be entered only based upon specific facts showing good cause, and not upon unsupported allegations or assumptions.  FedEx pays conclusory lip service to having highly confidential technical information that might be misused by Constellation's outside litigation counsel who also prosecute patents.  FedEx, however, has come forward with no facts or evidence to support such allegations.  As such, FedEx's unsupported assertions should carry no weight.  In addition, FedEx does not even attempt to support an assertion that Constellation's outside litigation counsel are involved in "competitive decisionmaking" for Constellation or any other entity.  FedEx's primary, if not only, justification for good cause is its argument that, "The Nature of the Spangenberg Companies Requires a Patent Prosecution Bar to Ensure that Defendants' Highly Confidential Information Is Not Misused."  This argument is baseless and irrelevant.

Since FedEx lacks good cause for any prosecution bar, much less one that is vague and overbroad, the Court should adopt Constellation's proposed compromise.

##### 1.  FedEx's Allegations About the "Nature of the Spangenberg Companies" are Baseless and Should Carry No Weight.  Moreover, Even if All True, Which They are Not, This is Irrelevant to the Scope of a Prosecution Bar Applicable Only to Outside Counsel.

FedEx's "mudslinging" allegations about the "Nature of the Spangenberg Companies" are baseless and should carry no weight.  Given that FedEx has clearly taken the "low road" of

9

slanderous and baseless allegations, Constellation is compelled to respond to FedEx's allegations.

First, FedEx alleges, with no factual support, that Constellation and other "Spangenberg Companies" engage in "extracting settlement fees from companies through the threat of protracted and expensive patent litigation." Second, FedEx alleges, again with no factual support, that the "Spangenberg Companies' prosecution strategy involves keeping its patent applications alive in the U.S. Patent and Trademark Office by filing multiple continuation applications so as to permit the Spangenberg Companies to draft new claims that attempt to cover developments in sales and presentation systems as they unfold." Both of these allegations are baseless and untrue. It is FedEx's burden to show good cause for its proposed prosecution bar, and good cause cannot be based upon irresponsible allegations devoid of factual support.

The licensing and enforcement of property rights, including intellectual property rights, by Constellation or anyone else is a wholly legitimate activity. FedEx's suggestion that such activities are improper is wrong, conflicts with the Patent Act and other laws of this country, and provides no basis for the relief requested in its Motion.

Moreover, the alleged "nature of the Spangenberg Companies" is irrelevant. No one working for any of the alleged "Spangenberg Companies" (except outside litigation counsel for Constellation) will have access to Highly Confidential – Technical information under either side's version of the protective order. The *only* persons who will have access to Highly Confidential – Technical information are outside litigation counsel and outside experts or consultants that are eventually qualified to receive such information under the protective order. As such, FedEx's focus on the "Spangenberg Companies" is, in reality, an indirect attack on Constellation's outside counsel, who are the only persons impacted by FedEx's proposed bar.

When viewed in light of its lack of factual support and stripped of its rhetoric, FedEx's position is essentially that a vague and overbroad prosecution bar is justified because outside counsel who represent Plaintiffs like Constellation are untrustworthy. Such contentions regarding members of the bar of this Court are unappreciated and improper.

### 2. Constellation's Pending Patent Applications are Irrelevant.

FedEx devotes substantial argument to the alleged danger posed by Constellation's pending applications. This argument is irrelevant in light of Constellation's proposed prosecution bar. Constellation has already proposed that outside counsel who has access to Highly Confidential – Technical information will be barred from prosecuting Constellation's patent applications. Moreover, to address FedEx's concern that Constellation might transfer its patent applications to another, Constellation has proposed that the prosecution bar would follow these applications in the event they are transferred. Constellation's proposed prosecution bar addresses all of the concerns raised by FedEx that could possibly be deemed legitimate.

### 3. FedEx's Issues with Attorney Pridham's Work History do Not Provide Good Cause for any Prosecution Bar, Much Less one that is Vague and Overbroad.

FedEx makes several assertions regarding the work history of one of Constellation's outside counsel, Mr. David Pridham. Yet FedEx stops short of contending that Mr. Pridham engages in competitive decisionmaking, presumably because such an assertion would not pass scrutiny. FedEx focuses upon three issues with Mr. Pridham. First, Mr. Pridham is Constellation's registered agent. Yet a registered agent is little more than a mailbox for service of process, and it is commonplace for outside counsel to serve as the registered agent for their client. Second, Mr. Pridham is the former General Counsel of a publicly traded company named FirePond, Inc., and while in that capacity he executed patent assignments at the direction of the

company's management and in doing so engaged in the sale and transfer of certain patents. Yet, notably, Mr. Pridham has not been the General Counsel of FirePond for several years. Third, FedEx points out that, since leaving the employment of Firepond, Mr. Pridham has represented multiple clients alleged to be related to Constellation in other litigation. Yet every litigator represents multiple clients, and it is commonplace for litigators to have multiple representations of clients or related entities. None of these issues justify a prosecution bar, especially a vague and overbroad one, against Mr. Pridham or any other of Constellation's outside counsel.

###    B.    Besides Lacking Good Cause, FedEx's Proposal is Vague and Overbroad.

FedEx's proposal is vague and overbroad because it seeks to restrict Constellation's outside litigation counsel from prosecuting applications "related to the subject matter" of the '302 patent. During the meet and confer process over this protective order, Constellation asked FedEx to explain what FedEx deems to be "related to the subject matter" of the '302 patent, but FedEx refused to do so. In addition, during the meet and confer process Constellation asked FedEx to narrow "related to the subject matter" into something with more defined meets and bounds, but FedEx declined to do so.

FedEx correctly points out that Courts, including this one, have issued protective orders using similar language in different cases involving different facts, different lawyers and different patents. Yet the Federal Circuit, specifically in *U.S. Steel* and *In Re Sibia*, requires Courts to look at the specific facts of each case. In some cases, for example the *Katz* case involving the discreet issue of specific call center technology, there may be no reasonable dispute over whether something is "related to the subject matter" of a particular patent-in-suit. In those cases – assuming the threshold of good cause has been met -- such language might be appropriate. In other cases, the counsel affected by the prosecution bar may have no intention of prosecuting

patents for the litigants, or for anyone else, so they may not be concerned about whether the prosecution bar is vague or overbroad.

When scrutinized, this Court's protective orders relied upon by FedEx support Constellation's position, not FedEx's, because each protective order is limited to work for the parties to such lawsuits. The *Katz* protective order at Exhibit 16 to FedEx's Motion states that confidential materials shall not be disclosed to persons prosecuting applications "related to the subject matter of this litigation on behalf of the plaintiff, A2D, L.P., or any defendant. . ." Unless the outside counsel litigating the *Katz* case were prosecuting patents for the litigants, it would not matter to anyone whether "related to the subject matter" was vague or not. In that protective order, limits and certainty are provided by such counsel avoiding patent prosecution for the litigants, while they are still free to prosecute patents on behalf of other clients without fear of contempt due to a disagreement over what constitutes "related to the subject matter."

In addition, FedEx's reliance upon the *DRR Holdings* protective order at Exhibit 17 to its Motion is misplaced. As noted in Exhibit 17, the parties to the *DRR Holdings* case both submitted proposals that a bar should be applied to prosecution of applications related to the subject matter of the litigation "on behalf of Plaintiff, or any Defendant. . ." Here again, unless the outside counsel litigating the *DRR Holdings* case were prosecuting patents for the litigants, it would not matter to anyone whether "related to the subject matter" was vague or not. The limits and certainty are provided by such counsel avoiding patent prosecution for the litigants, while they are still free to prosecute patents on behalf of other clients without fear of contempt due to a disagreement over what constitutes "related to the subject matter."

In addition, FedEx's reliance upon the protective order from the *Broadcom* case at Exhibit 18 to its Motion is misplaced. In the *Broadcom* case, this Court *rejected* Broadcom's

proposal for a bar covering "*any*" applications having related subject matter as overbroad. Rather, the Court approved of a bar for prosecution "related to the subject matter of the patents . . . on behalf of Plaintiff, or any Defendant." Yet again, limits and certainty are provided by such counsel avoiding patent prosecution for the litigants, while they are still free to prosecute patents on behalf of other clients without fear of contempt due to a disagreement over what constitutes "related to the subject matter."

FedEx's own Motion provides strong evidence of why it would be inappropriate to hold Constellation's outside litigation counsel in contempt for prosecuting patents asserted to have subject matter "related to" the '302 patent. At page 3 of its Motion, FedEx alleges two "examples" of Constellation's four pending applications are "related to the subject matter of the '302 patent." FedEx's first example is Exhibit 5 to FedEx's Motion, which is U.S. Patent Application Serial No. 09/739,448, entitled, "System and Method for Providing Configuration and Sales Information to Assist in the Development of Insurance Plans." FedEx's second example is Exhibit 6 of FedEx's Motion, which is U.S. Patent Application Serial No. 11/152,571, entitled, "System and Method for Generating a Customized Proposal in the Development of Insurance Plans." Constellation fails to see how these patents have "related subject matter to the '302 patent." Moreover, FedEx is not in the insurance business, and it has no legitimate basis for a prosecution bar applicable to, for example, patent applications directed to the insurance business.

In addition to the above, FedEx's proposed prosecution bar is overbroad because it seeks to restrict Constellation's outside counsel from prosecuting such applications for *any* clients, not just Constellation. Multiple of Constellation's outside litigation counsel are licensed to practice

before the U.S. Patent & Trademark Office.[3]  All of such counsel work at small firms, and it would impose an unfair hardship to restrict their work for *any* clients, rather than just for Constellation.  This is especially true in view of FedEx's unreasonable view of what is "related to the subject matter" of the '302 patent (patents relating to insurance proposals, for example).  To avoid the threat of contempt, Constellation's outside counsel would have to cut a broad path to avoid prosecuting any patents for other clients that might concern FedEx.

## IV.   Conclusion.

Prosecution bars, if appropriate in a case, should be narrowly tailored in accordance with the facts of that case.  FedEx bears the burden of proving facts showing good cause for its proposed prosecution bar.  Yet FedEx's motion comprises baseless, irrelevant accusations against parties who are not affected by its proposed prosecution bar.  FedEx fails to show that Constellation's outside counsel are engaged in competitive decisionmaking, and FedEx fails to put forth any facts justifying the relief sought.

When viewed in light of its lack of factual support and stripped of its rhetoric, FedEx's position is essentially that a vague and overbroad prosecution bar is justified because outside counsel who represent Plaintiffs like Constellation are untrustworthy.  This is flat wrong.

Unlike FedEx's proposed vague and overbroad prosecution bar which is inconsistent with a court order punishable by contempt, Constellation's proposed compromise prosecution bar is fair, reasonable and consistent with precedent.  Specifically, Constellation's limit of the bar to prosecution on behalf of Constellation is consistent with the *Katz*, *DRR Holdings* and *Broadcom* protective orders from this Court.  In particular, the limits and certainty are provided by avoiding prosecution for a specific litigant, Constellation, while counsel are still free to prosecute patents

---

[3] Messrs. Williams, Morgan, Amerson, Edmonds and Cook are all members of this Court's Bar and the Patent Bar. *See http://des.uspto.gov/OEDCI/*.

on behalf of other clients without fear of being held in contempt for disagreements over the scope of the bar. Thus, especially in view of the absence of good cause for FedEx's proposed prosecution bar, good cause exists for entry of Constellation's proposed bar.

WHEREFORE, premises considered, the Court should deny FedEx's motion for entry of FedEx's proposed protective order, and the Court should grant Constellation's motion for entry of its proposed protective order at Exhibit 1 hereto. Constellation also requests such other relief to which it may be entitled.

August 3, 2007

Respectfully submitted,

CONSTELLATION IP, LLC

By: /s/ John J. Edmonds_____
Danny L. Williams
LEAD ATTORNEY
Texas Bar No. 21518050
J. Mike Amerson
Texas Bar No. 01150025
Terry D. Morgan
Texas Bar No. 14452430
Williams, Morgan & Amerson, P.C.
10333 Richmond, Suite 1100
Houston, Texas 77042
Telephone: (713) 934-4060
Facsimile: (713) 934-7011
E-mail: danny@wmalaw.com
E-mail: mike@wmalaw.com
E-mail: rbains@wmalaw.com

David M. Pridham
R.I. Bar No. 6625
Intellectual Property Navigation Group, LLC
207 C North Washington Avenue
Marshall, Texas 75670
Telephone: (903) 234-0507
Facsimile: (903) 234-2519
E-mail: david@ipnav.com

John J. Edmonds
Texas Bar No. 00789758
THE EDMONDS LAW FIRM
709 Sabine Street
Houston, Texas 77007
Telephone:  (713) 858-3320
Facsimile:  (832) 767-3111
E-mail:  johnedmonds@edmondslegal.com

Jason W. Cook
Texas Bar No. 24028537
Law Office of Jason W. Cook
5320 Victor St.
Dallas, Texas 75214
Telephone: (214) 504-6813
Facsimile: (469) 327-2777
E-mail: jcook@cookip.com

T. John Ward, Jr.
Texas Bar No. 00794818
WARD & SMITH LAW FIRM
P.O. Box 1231
Longview, Texas 75606-1231
Telephone:  (903) 757-6400
Facsimile:  (903) 757-2323
E-mail:  jw@jwfirm.com

Eric M. Albritton
Texas Bar No. 00790215
J. Scott Hacker
Texas Bar No. 24027065
ALBRITTON LAW FIRM
P.O. Box 2649
Longview, Texas 75606
Telephone:  (903) 757-8449
Facsimile:  (903) 758-7397
Email:  ema@emafirm.com
Email:  jsh@emafirm.com

ATTORNEYS FOR PLAINTIFF
CONSTELLATION IP, LLC

## CERTIFICATE OF SERVICE

      I hereby certify that the counsel of record who are deemed to have consented to electronic service are being served today with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3). Any other counsel of record will be served by electronic mail, facsimile transmission and/or first class mail on this same date.

Dated: August 3, 2007                                  /s/ John J. Edmonds_____
                                                                             John J. Edmonds

## CERTIFICATE OF CONFERENCE

       The undersigned has conferred with opposing counsel in a good faith attempt to resolve this matter without court intervention, but this motion is opposed.

                                                 /s/ John J. Edmonds
                                                John J. Edmonds